UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X
ZU FEI HUANG,

                Plaintiff,                        **REPORT & RECOMMENDATION**
                                                            **19 CV 3309 (ENV)(LB)**

      -against-

KIM DANG NGUYEN, *doing business as*
*Royal Home Realty Company*, and LUONG
TUAN TA, *doing business as LT Realty*,

                Defendants.
---------------------------------------------------------X
**BLOOM, United States Magistrate Judge:**

      Plaintiff, Zu Fei Huang ("Huang"), brings this diversity action alleging defendants Kim

Dang Nguyen ("Kim") and Luong Tuan Ta ("Luong") directed him to wire $134,987.81 to an

incorrect bank account as part of a real estate transaction. Plaintiff alleges that defendants' actions

give rise to claims for fraud, fraudulent misrepresentation, unjust enrichment, and negligence.

Despite proper service of the summons and complaint, defendants have failed to plead or otherwise

defend this action. Plaintiff now moves for a default judgment pursuant to Rule 55(b)(2) of the

Federal Rules of Civil Procedure. The Honorable Eric N. Vitaliano referred plaintiff's motion for

a default judgment to me for a Report and Recommendation in accordance with 28 U.S.C.

§ 636(b). For the reasons set forth below, it is respectfully recommended that plaintiff's motion

for a default judgment should be denied for lack of personal jurisdiction over defendants and

plaintiff's action should be dismissed without prejudice.

## BACKGROUND[1]

This case arises from a real estate transaction. Plaintiff is a citizen of New York. ECF No. 1, Complaint ("Compl.") ¶ 7. Defendants Kim and Luong reside in California.[2] Id. ¶¶ 2–4, 7.

In September 2018, using the real estate website Zillow.com, plaintiff located real estate in Apple Valley, California (the "Property") which he became interested in purchasing. Id. ¶¶ 9–10. Plaintiff's friend in California, Zhongjiu Yu ("Zhongjiu"), "acted as Plaintiff's agent" and contacted Kim on plaintiff's behalf to purchase the Property. Id. ¶ 10. Kim represented that he was a licensed real estate broker in California and introduced Luong as his supervisor. Id. ¶¶ 11–12. Plaintiff relied on these representations to hire Kim as his broker[3] and to purchase the Property for $500,297.47. Id. ¶¶ 13, 18.

On October 22, 2018, plaintiff paid a security deposit in the amount of $10,000.00 to Chicago Title Insurance Company ("CTIC"). Id. ¶¶ 5, 19. Kim had introduced plaintiff to CTIC.[4] Id. ¶ 17. In November 2018, plaintiff successfully applied for a $337,400.00 loan from Karzi Equities, LTD; plaintiff was also introduced to Karzi Equities, LTD by Kim. Id. ¶¶ 16, 20.

On November 20, 2018, CTIC prepared a real property contract ("Contract") for plaintiff to purchase the Property. Id. ¶ 21. On November 22, 2018, a representative of CTIC, Cathy

---

[1] The facts are drawn from the uncontested allegations in plaintiff's complaint, as well as documents incorporated by reference, and are taken as true for the purpose of deciding this motion. See Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc., 109 F.3d 105, 108 (2d Cir. 1997) (deeming all well-pleaded allegations in a complaint admitted on a motion for a default judgment).

[2] Plaintiff does not specifically allege the citizenship of Kim or Luong . He only alleges that they "reside" in California, Compl. ¶¶ 3–4, and are not "citizen[s] of New York," id. ¶ 7.

[3] At some point after the transaction, plaintiff learned that Kim's real estate license had been suspended in March 2018. Compl. ¶ 15.

[4] CTIC and Cathy Esposito were initially named as defendants, ECF No. 1; however, plaintiff voluntarily dismissed these two defendants on July 12, 2019, ECF Nos. 7–8.

Esposito, sent Kim wire transfer information ("Wire Transfer Information") to relay to plaintiff. Id. ¶ 22.

On November 23, 2018, plaintiff executed the Contract at 240 8th Avenue, New York, New York with another agent of CTIC. Id. ¶ 23. Later that day, Kim instructed plaintiff to remit the contractual balance of $152,108.47 to the account set forth in the Wire Transfer Information. Id. ¶ 24. Plaintiff notified Kim that the account listed in the Wire Transfer Information differed from the account listed in the Contract; however, Kim confirmed that the account listed in the Wire Transfer Information was correct. Id. ¶ 25.

On November 26, 2018, Esposito also instructed plaintiff to remit the contractual balance to the account provided in the Wire Transfer Information. Id. ¶ 26. Plaintiff wired $152,108.47 through his Citi Bank account (the "Transfer") to the account specified in the Wire Transfer Information and told Kim that he had done so. Id. ¶¶ 24, 27–28. Esposito reported that CTIC had received the Transfer; Kim and Luong also confirmed that CTIC had received the Transfer. Id. ¶¶ 30, 32.

However, on November 27, 2018, Kim told plaintiff that CTIC had not received the Transfer and asked plaintiff to provide a receipt of the Transfer. Id. ¶ 34. Confusingly, the same day, Esposito informed Kim that CTIC had indeed received the Transfer, and Kim informed plaintiff that the Transfer had been received. Id. ¶¶ 35–36. But later the same day, another representative of CTIC informed plaintiff that the Transfer had been sent to the incorrect bank. Id. ¶ 37. Plaintiff immediately filed a complaint to the Internet Crime Complaint Center and Kim told plaintiff to send "Capital Bank One" a hold harmless letter. Id. ¶¶ 38–39. Plaintiff attempted to cancel the Transfer, but was only able to recover $27,120.66 through CitiBank. Id. ¶ 40.

Plaintiff brings this action against Kim and Luong seeking $134,987.81 claiming fraud, fraudulent misrepresentation, unjust enrichment, and negligence. Id. ¶¶ 41–52, 60–67, 68–80.

## PROCEDURAL HISTORY

Plaintiff filed the instant action on June 4, 2019.[5] ECF No. 1. Plaintiff served the summons and complaint on Kim and Luong on June 28, 2019 and June 12, 2019, respectively. ECF Nos. 9–10. At plaintiff's request, the Clerk of Court noted entries of default against Kim and Luong.[6] ECF Nos. 12, 15. Plaintiff now moves for a default judgment pursuant to Rule 55(b)(2). ECF No. 16. Plaintiff's motion attaches the summons, complaint, affidavits of service, requests for entry of default, entry of defaults, certifications of defendants' non-military status, and a proposed judgment.[7] ECF Nos. 17-1–17-10.

---

[5] Plaintiff's verification of his complaint was sworn to in Los Angeles, California. Compl. at 13.

[6] The Clerk entered a default against defendant Kim on August 8, 2019. ECF No. 12. Although Kim filed a *pro se* answer on August 28, 2019, ECF No. 14, Kim did not move to vacate the entry of default against him. Nonetheless, as the Court lacks personal jurisdiction against both defendants, I recommend that the complaint should be dismissed without prejudice as set forth herein.

Plaintiff may argue that Kim waived his personal jurisdiction defense by failing to raise the defense in his answer. "It is well established that a party forfeits its defense of lack of personal jurisdiction by failing timely to raise the defense in its initial responsive pleading." City of N.Y. v. Mickalis Pawn Shop, LLC, 645 F.3d 114, 134 (2d Cir. 2011) (citing Fed. R. Civ. P. 12(h)). However, the Second Circuit has "ruled that courts should proceed with caution in finding forfeiture of personal jurisdiction defenses." Corporación Mexicana De Mantenimiento Integral, S. De R.L. De C.V. v. Pemex-Exploración Y Producción, 832 F.3d 92, 113 (2d Cir. 2016) (Winter, J., concurring) (internal quotation marks and citation omitted). Furthermore, *pro se* litigants are afforded more lenient treatment. Tracy v. Freshwater, 623 F.3d 90, 101 (2d Cir. 2010) ("The rationale underlying this rule [to afford *pro se* litigants special solicitude] is that a *pro se* litigant generally lacks both legal training and experience and, accordingly, is likely to forfeit important rights through inadvertence if he is not afforded some degree of protection.").

Thus, I find that Kim did not waive his personal jurisdiction defense by filing his *pro se* answer. See Corporación Mexicana De Mantenimiento Integral, S. De R.L. De C.V, 832 F.3d at 114–15 (Winter, J., concurring) (collecting cases where "courts have declined to find forfeiture where defendants did not argue personal jurisdiction . . . at every possible stage of litigation, including cases in which litigants were quite derelict in raising these defenses"); Infinity Consulting Grp., LLC v. Am. Cybersystems, Inc., No. 09-CV-1744 (JS)(WDW), 2010 WL 2267470, at *2 (E.D.N.Y. May 30, 2010) ("Typically, courts have found forfeiture only if the party waited years before moving or engaged in substantial pre-trial activity. Conversely, courts have generally declined to find forfeiture when a party waited only months, absent significant pre-trial activity") (citing cases).

[7] Local Civil Rule 7.1 requires parties to file a memorandum of law and supporting affidavits with their motion. L. Civ. R. 7.1(a)(2)–(3). Although plaintiff failed to meet these requirements, the Court has still considered the motion. In the future, plaintiff's counsel shall file the required memorandum of law and affidavits in order for any motion to be considered.

4

# DISCUSSION

## I.    Legal Standard

Rule 55 of the Federal Rules of Civil Procedure establishes the two-step process for a plaintiff to obtain a default judgment. First, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). A plaintiff may then move for a default judgment against a defendant. Fed. R. Civ. P. 55(b)(2). If a defendant fails to appear or move to set aside the default under Rule 55(c), the Court may enter a default judgment on plaintiff's motion. Id.

A "plaintiff is not entitled to a default judgment as a matter of right simply because a party is in default." Finkel v. Universal Elec. Corp., 970 F. Supp. 2d 108, 118 (E.D.N.Y. 2013) (citing Erwin DeMarino Trucking Co. v. Jackson, 838 F. Supp. 160, 162 (S.D.N.Y. 1993) (courts must "supervise default judgments with extreme care to avoid miscarriages of justice")).

On a motion for a default judgment, the Court "deems all the well-pleaded allegations in the pleadings to be admitted." Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 108 (2d Cir. 1997); see also Finkel, 970 F. Supp. 2d 108, 119 (E.D.N.Y. 2013). Regardless of the assumption of truth, the Court has a "responsibility to ensure that the factual allegations, accepted as true, provide a proper basis for liability and relief." Rolls-Royce plc v. Rolls-Royce USA, Inc., 688 F. Supp. 2d 150, 153 (E.D.N.Y. 2010) (citing Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981)). In other words, "[a]fter default . . . it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." Id. (citation omitted). If the unchallenged facts establish defendant's liability, the Court then determines the amount of damages due. Credit

Lyonnais Secs. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999) (citing Transatlantic Marine Claims Agency, Inc., 109 F.3d at 111).

## II.    Personal Jurisdiction

"[B]efore a court grants a motion for default judgment, it may first assure itself that it has personal jurisdiction over the defendant[.]" Sinoying Logistics Pte. Ltd v. Yi Da Xin Trading Corp., 619 F.3d 207, 213 (2d Cir. 2010). The plaintiff has the burden to establish that the Court has personal jurisdiction over each defendant by demonstrating that the defendant was properly served and identifying "a statutory basis for personal jurisdiction that renders such service of process effective." Licci ex rel. Licci v. Lebanese Canadian Bank, SAL, 673 F.3d 50, 59–60 (2d Cir. 2012).

The Court's exercise of personal jurisdiction over a non-domiciliary in a diversity action is governed by the law of the forum state—in this case, New York law. Whitaker v. Am. Telecasting, Inc., 261 F.3d 196, 208–09 (2d Cir. 2001). To establish personal jurisdiction over non-domiciliaries, defendants Kim and Luong in the instant case, plaintiff must establish either general jurisdiction pursuant to New York's Civil Practice Law and Rule ("CPLR") Section 301 or demonstrate that "defendant[s] committed acts within the scope of New York's long-arm statute, [CPLR Section] 302[.]" Ixotic AG v. Kammer, No. 09-CV-4345 (NG)(JO), 2015 WL 270028, at *9 (E.D.N.Y. Jan. 21, 2015) (citing Schultz v. Safra Nat'l Bank of N.Y., 377 Fed. App'x 101, 102 (2d Cir. 2010) (summary order)). If plaintiff is able to demonstrate the requisite statutory basis, the Court must then determine whether exercising personal jurisdiction over the defaulting defendant would comport with the Due Process Clause. Licci, 673 F.3d at 59–60.

Although service of process appears to have been properly made on Kim and Luong, ECF Nos. 9–10, the record does not establish a basis for personal jurisdiction over either of these

defendants under New York law. Plaintiff alleges that Kim misrepresented himself as a licensed real estate broker in California and instructed plaintiff to wire funds from plaintiff's bank account in New York to the account specified in the Wire Transfer Information generated by CTIC. Other than alleging Luong is Kim's supervisor, Compl. ¶ 11, there are no allegations against him.[8] These allegations are insufficient to establish personal jurisdiction over defendants for the following reasons.

### a. CPLR Section 301

Plaintiff fails to establish general jurisdiction over Kim and Luong pursuant to CPLR Section 301. "Pursuant to N.Y. C.P.L.R. § 301, a defendant is subject to personal jurisdiction if he is domiciled in New York, served with process in New York, or continuously and systematically does business in New York." Jonas v. Estate of Leven, 116 F. Supp. 3d 314, 323–24 (S.D.N.Y. 2015) (citing cases). Here, plaintiff does not allege that Kim or Luong were domiciled, served process, or continuously and systematically did business in New York. Plaintiff's complaint does not allege that defendants were "present" or "doing business" in New York, much less that they were in New York on a "continuous, permanent, and substantial" basis. Ixotic AG, 2015 WL 270028, at *9 (citation omitted). Accordingly, there is no basis for the Court to exercise personal jurisdiction over Kim and Luong pursuant to CPLR Section 301. See Bentivoglio v. Event Cardio Group, Inc., No. 18-cv-2040 (PKC), 2019 WL 6341130, at *3–4 (S.D.N.Y. Nov. 27, 2019) (finding no personal jurisdiction under CPLR Section 301 and dismissing plaintiff's cause of action where defendant was not domiciled in New York and otherwise "did not have offices or conduct business in New York."); Eastboro Found. Charitable Tr. v. Penzar, 950 F. Supp. 2d 648,

---

[8] Although plaintiff also pleads that "[o]n November 27, 2018, Defendants KIM and [Luong] confirmed to Plaintiff and Zhongjiu that Defendant CHICAGO TITLE received the Balance Amount from Plaintiff[,]" Compl. ¶ 32, Luong is not included in any of the correspondence attached to plaintiff's complaint. See ECF No. 1-4–1-13.

657–58 (S.D.N.Y. 2013) (no personal jurisdiction over defendant in part "because the present claims do not arise from legal services [defendant] rendered in New York[.]").

### b. CPLR Section 302

Plaintiff's complaint also fails to establish a basis for jurisdiction over Kim and Luong under New York's long-arm statute. The statute provides for jurisdiction over a non-domiciliary who:[9]

> (1) transacts any business within the state or contracts anywhere to supply goods or services in the state; or . . .

> (3) commits a tortious act without the state causing injury to person or property within the state . . . if he (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce[.]

CPLR § 302(a); see also Lipson v. Birch, 46 F. Supp. 3d 206, 218 (E.D.N.Y. 2014) (discussing the factors under CPLR Section 302) (citing cases).

### 1. CPLR Section 302 (a)(1)

"Section 302(a)(1) is typically invoked for a cause of action against a defendant who breaches a contract with plaintiff, or commits a commercial tort against plaintiff in the course of transacting business or contracting to supply goods or services in New York." Eastboro Found.

---

[9] The Court confines its analysis to Sections 302(a)(1) and 302(a)(3) because Sections 302(a)(2) and 302(a)(4) are inapposite to the facts of this case. Plaintiff has not alleged that defendants or their agents committed tortious acts while physically present in New York. See CPLR § 302(a)(2); Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 171 F.3d 779, 789–90 (2d Cir. 1999) ("At minimum, to qualify for jurisdiction under [CPLR § 302(a)(2)], a defendant's act or omission [must have] occur[red] within the state . . . . [A] defendant's physical presence in New York is a prerequisite to jurisdiction under § 302(a)(2).") (internal quotation marks and citation omitted). Furthermore, plaintiff does not allege that defendants own, use, or possess any real property in New York. See CPLR § 302(a)(4) ("[A] court may exercise personal jurisdiction over any non-domiciliary who . . . owns, uses, or possesses any real property situated within the state.").

Charitable Tr., 950 F. Supp. 2d at 658 (citing Chloe v. Queen Bee of Beverly Hills, LLC, 616 F.3d 158, 172 (2d Cir. 2010) and Beacon Enters., Inc. v. Menzies, 715 F.2d 757, 764 (2d Cir. 1983)).

Under Section 302(a)(1), the Court analyzes "(1) whether the defendant 'transacts any business' in New York, and if so, (2) whether this cause of action 'aris[es] from' such business transaction." Best Van Lines, Inc. v. Walker, 490 F. 3d 239, 246 (2d Cir. 2007) (citation omitted). The Court first examines whether the "totality of the defendants' activities within the forum" constitutes "purposeful activity." Id. (internal quotation marks and citation omitted). "Purposeful activities are volitional acts by which the non-domiciliary 'avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" Jonas, 116 F. Supp. 3d at 325 (citing Paterno v. Laser Spine Inst., 24 N.Y.3d 370, 376 (2014)). "New York courts have consistently refused to sustain section 302(a)(1) jurisdiction solely on the basis of defendant's communication from another locale with a party in New York[.]" Prout v. Vladeck, 334 F. Supp. 3d 599, 611 (S.D.N.Y. 2018) (citing Beacon Enterprises, Inc., 715 F.2d at 766). The Court then examines whether there is "an articulable nexus, or a substantial relationship, between the claim asserted and the actions that occurred in New York." Best Van Lines, Inc., 490 F. 3d at 246 (internal quotation marks and citation omitted).

Here, plaintiff's complaint makes clear that defendants' connections to New York were "entirely incidental, not purposeful," and thus are insufficient to establish personal jurisdiction pursuant to Section 302(a)(1). Prout, 334 F. Supp. 3d at 613 (citation omitted). Neither Kim nor Luong solicited plaintiff's business. Zhongjiu, plaintiff's friend in California who "acted as Plaintiff's agent" initially contacted Kim. Compl. ¶ 10. Plaintiff does not allege that defendants maintain a physical location, bank accounts, or an online presence in New York or that defendants traveled to New York in connection with this transaction. Although plaintiff alleges that Kim

communicated with him in New York, "letters," "calls," and e-mail exchanges to plaintiff in New York to perform "non-New York services" do not establish personal jurisdiction under Section 302(a)(1). Lipson, 46 F. Supp. 3d at 218 (citing Mayes v. Leipziger, 674 F.2d 178, 185 (2d Cir. 1982) (no personal jurisdiction over California lawyers "who never entered New York but who undertook in letters and telephone calls from California to New York the representation of a New York resident in litigation in California.")). Furthermore, the contract, although executed in New York, was done in the presence of a representative of CTIC, a defendant that was voluntarily dismissed, and there are no allegations that the CTIC representative is an agent of either of the named defendants. ECF Nos. 7–8.

In sum, plaintiff fails to establish that Kim or Luong conducted "purposeful activities" within New York under Section 302(a)(1). See Prout, 334 F. Supp. 3d at 613 (no personal jurisdiction where defendant, an attorney, "engaged in several communications with New York-based parties . . . [however] his communications were made in service of litigation conducted outside the state."); Bissonnette v. Podlaski, 138 F. Supp. 3d 616, 625 (S.D.N.Y. 2015) (no personal jurisdiction where defendant attorney did not "solicit the relationship [with plaintiff], use communications into New York to insert [himself] into localized business transactions, or 'engage in extensive purposeful activity [in New York] without ever actually setting foot in the State'") (citation omitted); Forgash v. Paley, 659 F. Supp. 728, 730–31 (S.D.N.Y. 1987) (a defendant "will not be subject to suit in New York simply because a New York resident solicited his services, or that the defendant placed telephone calls to and corresponded with a New York business in connection with the purchase and sale of out-of-state property.") (citations omitted).[10]

---

[10] See also Lipson, 46 F. Supp. 3d at 217–18 (no personal jurisdiction where New York plaintiff solicited and retained attorneys from Pennsylvania, who performed services outside of New York and did not "project[] [themselves] into New York State" by sending plaintiff e-mails); Eastboro Found. Charitable Tr., 950 F. Supp. 2d at 663 (no personal jurisdiction in an attorney-client context as "New York courts decline to base the exercise of personal jurisdiction on

## 2.  CPLR Section 302(a)(3)

To establish jurisdiction under CPLR 302(a)(3), "plaintiff must first show that the defendant committed a tortious act outside New York and that defendant's tortious activity caused injury to person(s) or property inside New York." Lipson, 46 F. Supp. 3d at 218. Plaintiff must then establish "1) the defendant regularly does business in New York; engages in a persistent course of conduct in New York; or derives substantial revenue from commercial activities in New York; or 2) the defendant should have reasonably expected the act to have consequences in the state and defendant derives substantial revenue from interstate commerce." Id. at 218–19 (citations omitted); see also Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC, 450 F.3d 100, 106 (2d Cir. 2006) (discussing the elements required to establish personal jurisdiction under CPLR Section 302 (a)(3)).

Assuming, *arguendo*, that plaintiff has adequately demonstrated that defendants committed a tortious act in California that caused plaintiff injury in New York,[11] plaintiff still fails to establish a basis for personal jurisdiction over defendants pursuant to Section 302(a)(3).

First, although plaintiff demonstrates that Kim communicated to plaintiff via e-mail and text messages, Compl. ¶¶ 24, 32, 34, 36, 39; ECF Nos. 1-4, 1-9–1-10, 1-12–1-13, he fails to

---

the mere fact that an attorney's client was a New York resident where, as here, New York law was not implicated and the representation had no connection to New York.") (citing cases); Pincione v. D'Alfonso, No. 10 Civ. 3618 (PAC), 2011 WL 4089885, at *7 (S.D.N.Y. Sept. 13, 2011) (The "communications, while numerous, were [not] made with the intent to project the caller into New York and avail himself of its laws. If anything, the calls were to facilitate a business deal in Italy . . . One must do more than merely negotiate a business deal with a New York resident to project himself into New York and purposely avail himself of its laws. The communications were aimed at [plaintiff], rather than New York. This is insufficient to trigger personal jurisdiction under § 302(a)(1).").

[11] As plaintiff fails to establish the remaining three elements, the Court need not determine whether the situs of the injury at issue is New York. Courts have reached different conclusions regarding the situs of the injury where a plaintiff relied on an out-of-state defendant's misrepresentations. "To determine whether a tortious act caused an injury in New York, courts apply the situs-of-the-injury test, which asks where the original event which caused the injury occurred." Miller Inv. Trust v. Xiangchi Chen, 967 F. Supp. 2d 686, 695 (S.D.N.Y. 2013) (internal quotation marks and citation omitted). Some courts have held that the original event is defendant's misrepresentation, while other courts have held that the original event is plaintiff's reliance on defendant's misrepresentation. Id. at 695–97 (citing cases).

establish that Kim and Luong regularly do or solicit business in New York; nor does plaintiff establish that Kim and Luong regularly conduct business New York. Lipson, 46 F. Supp. 3d at 219–20 ("The fact that [defendant] e-mailed the Plaintiff, and cc-ed [co-defendant], while the Plaintiff resided in New York does not, without more, establish a basis for personal jurisdiction over [defendants] under § 302(a)(3)(i).").

Next, plaintiff fails to establish that defendants had a reasonable basis to expect their actions to have consequences in New York. "An objective test . . . governs whether a defendant expects or should reasonably expect his act to have consequences within New York." Lipson, 46 F. Supp. 3d at 219. "[U]nder New York law, a party sending fraudulent misrepresentations into New York should reasonably expect the act to have consequences in New York." Related Cos., L.P. v. Ruthling, No. 17-CV-4175, 2017 WL 6507759, at *5 (S.D.N.Y. Dec. 18, 2017). However, "[f]oreseeability must be coupled with evidence of a purposeful New York affiliation . . . to the extent that [a defendant] would reasonably anticipate being haled into a New York court." Lipson, 46 F. Supp. 3d 219 (citing Energy Brands Inc. v. Spiritual Brands, Inc., 571 F. Supp. 2d 458 at 467–68 (S.D.N.Y. 2008)).

Here, the communications between Kim and plaintiff do not "plausibly suggest[] that [defendants] knew and intended [their] actions to have consequences in New York." Related Cos., L.P., 2017 WL 6507759, at *4–5 (finding that an out-of-state defendant's emails stating, *inter alia*, "I think we may have opened [P]andora's box by send[ing] the bank statements[,]" "Do you still want to go down this path with [plaintiffs]?" and "[we] need a clean story" evidenced foreseeability of consequences in New York). As previously stated, Luong is not even included in the communications between Kim and plaintiff attached to the complaint. Moreover, based on the attached exhibits and Esposito's initial confirmation that the Transfer was received, Compl. ¶ 35,

plaintiff has not plausibly alleged that Kim knew that the Wire Transfer Information was incorrect. Furthermore, plaintiff fails to establish that Kim or Luong purposefully availed themselves of the benefits of the laws of New York. See Verragio, Ltd. v. Malakan Diamond Co., No. 16 Civ. 4634 (CM), 2016 WL 6561384, at *3 (S.D.N.Y. Oct. 20, 2016) ("The mere fact that the injured party resides or is domiciled in New York is not a sufficient predicate for jurisdiction under CPLR § 302(a)(3).") (citations omitted).

Last, plaintiff has not established that either Kim or Luong gained substantial revenue from interstate commerce. See M&M Packaging, Inc. v. Kole, No. 04 Civ. 9532 (CLB), 2005 WL 6319489, at *3 (S.D.N.Y. July 27, 2005) (aff'd 183 Fed. Appx. 112 (2d Cir. 2006)) (no personal jurisdiction pursuant to Section 302(a)(3) in part because there is "no evidence in the record that . . . [defendants] regularly engaged in or solicited business in New York or derived substantial revenue from the state."). Here, plaintiff conclusory alleges that defendants "have been unjustly enriched in the amount of $134,987.81[,]" Compl. ¶ 72; however, there are no facts to support this assertion. The Court is "not bound to accept as true" such "legal conclusions couched as factual allegation[s.]" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Accordingly, plaintiff fails to establish a basis for jurisdiction over defendants under CPLR Section 302(a)(3)(ii).

**CONCLUSION**

As plaintiff fails to establish a basis for personal jurisdiction over defendants Kim and Luong, I respectfully recommend that plaintiff's motion for a default judgment should be denied. I further recommend that this action should be dismissed without prejudice. Global Plantation Investment—Deep Creek, LLC, v. Yin Xia, No. 17-CV-4294 (CBA)(ST), 2019 WL 2436278, at *6 (E.D.N.Y. Mar. 1, 2019) adopted as modified by, 2019 WL 1284811 (E.D.N.Y. Mar. 20, 2019)

13

(denying plaintiff's default motion and dismissing the case without prejudice because plaintiff failed to establish personal jurisdiction over defendants); see also Smith v. United States, 554 Fed. Appx. 30, 32 n.2 (2d Cir. 2013) ("dismissal [for lack of personal jurisdiction] does not preclude renewing those claims in a jurisdiction in which personal jurisdiction over the defendants can be obtained.") (citation omitted).

## FILING OF OBJECTIONS TO REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen days from service of this Report to file written objections. See Fed. R. Civ. P. 6. Such objections shall be filed with the Clerk of the Court. Any request for an extension of time to file objections must be made within the fourteen-day period. Failure to file a timely objection to this Report generally waives any further judicial review. Marcella v. Capital Dist. Physicians' Health Plan, Inc., 293 F.3d 42 (2d Cir. 2002); Small v. Sec'y of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989); see Thomas v. Arn, 474 U.S. 140 (1985).

SO ORDERED.

_____/S/_____
LOIS BLOOM
United States Magistrate Judge

Dated: February 11, 2020
       Brooklyn, New York

14